**Pearlie Caudill McINTOSH et al., Appellants,**

v.

**Jim TAULBEE et al., Appellees.**

Court of Appeals of Kentucky.

May 6, 1955.

O. J. Cockrell, Jackson, for appellants.

J. Douglas Graham, Campton, for appellees.

SIMS, Judge.

This is a motion for an appeal from a $2,000 judgment for damages which appellees, Jim and Vergie Taulbee, aver they have suffered by reason of a fraud perpetrated on them in a land transaction through a conspiracy entered into by appellants, Pearlie Caudill McIntosh and her mother, Edna Taulbee. To save time and space and to avoid confusion, we will refer to the parties by their given names.

Three grounds are assigned for reversal: (1) A verdict should have been directed in favor of appellants; (2) the instructions are erroneous; (3) the argument of appellees' counsel was improper and prejudicial. Since we find merit in the first ground, we do not reach the other two.

Edna formerly lived in Breathitt County, Ky., but on December 10, 1951, when she attempted to convey a tract of land of 200 acres in Wolfe County to Jim and his wife, Vergie, she was residing in Knox County, Indiana. She was a widow, 67 years of age, and on the occasion in question had returned to Kentucky to attend the funeral of her young granddaughter. While waiting for a ride in an automobile on her way back to Indiana, she spent the night in the

home of Jim and Vergie Taulbee in Wolfe County, whom she had known for many years. The record fails to show whether she was related to them or whether Jim and his wife or Edna were related to Pat Taulbee, who seems to have had title to the land in controversy. Edna had with her a deed to the 200 acres and she sold the land to Jim, who gave her two checks aggregating $2,000, the purchase price. There is a conflict in the evidence as to whether Edna or Jim first mentioned the sale of the land.

On December 10, 1951, the next morning after negotiating the sale, they went to the county court clerk, who told Jim that Edna had title to the land and could convey it. That official drew the deed from Edna to Jim and wife and after it was executed Jim went with Edna to the Farmers & Traders Bank of Campton, where she deposited the checks to the credit of her daughter, Pearlie. Possession of the farm was to be delivered to Jim on January 1, 1952.

It was testified by Edna that the reason she deposited the checks to the credit of Pearlie was she did not want to carry this large amount of money with her back to Indiana, and that she knew but little about checking money out of a bank. Pearlie was not present when her mother deposited the $2,000 to her credit and she knew nothing about the sale of the land until her mother returned to Indiana, where Pearlie also resided. On January 2, 1952, Pearlie, at her mother's request, drew a check on the Campton Bank payable to the Farmers Bank & Trust Company of Knox County for $2,000 and thereby obtained the money and delivered the cash to her mother.

When Jim went to take possession of the land he found Pat Taulbee on it and claiming title thereto. The record does not show whether Pat was related to any of the other parties to this controversy. Jim and Pat had a suit over the title to the farm, which Pat won and Jim did not appeal.

It appears from the record the farm had belonged to a former wife of Edna's deceased husband, Jorad Taulbee, and he only inherited a curtesy interest therein. Edna had some character of deed (the instrument is not in the record) from the sheriff in Wolfe County executed in 1943, and as she had lived on the land since September 1935, so she testified, she thought she had good title to it. Jim never had the title examined by a lawyer when he bought it from Edna but merely took the opinion of the county court clerk, who wrote the deed from Edna to him, that she had good title to the farm.

It will be noted that Jim did not sue on a breach of warranty of title but based his action on a conspiracy between Edna and her daughter to defraud him of the $2,000 he paid Edna for the farm. He seems to have brought this form of action rather than one for breach of warranty of title because Edna was insolvent while Pearlie owned lands in Pike County, Ky., (which he attached as Pearlie was a non-resident) out of which he hoped to make his judgment.

There is not a line of evidence in the record of a conspiracy between Edna and Pearlie to defraud Jim of $2,000. Nor is there any fact or circumstance shown from which it reasonably may be inferred there was a conspiracy between them to perpetrate a fraud upon Jim. At most, the evidence shows Edna sold Jim the farm to which she mistakenly thought she had title. Edna may be liable for a breach of the warranty of title contained in the deed, but certainly neither she nor Pearlie can be liable on a conspiracy to defraud Jim.

True, as contended by Jim and supported by the authorities he cites, one of which is Eustler v. Hughes, 267 Ky. 200, 101 S.W.2d 917, a conspiracy to accomplish an unlawful purpose can be, and often is, proved by a chain of isolated statements or acts of the conspirators from which the joint assent of their minds may be reasonably inferred. But this record shows no acts or statements by Edna or Pearlie from which it may be reasonably inferred they conspired to defraud Jim.

The facts in the case at bar clearly distinguish it from Lanham v. Felts, 306 Ky. 851, 209 S.W.2d 472, upon which Jim heavily leans. There, it was averred Mae Lan-

·ham and her husband conspired to, and did, sell Felts a stolen automobile. The husband turned over to Mae a stolen car which she claimed as a gift, but did.not inquire where, when or how her husband acquired it. Mae admits "she might" have told the purchaser it was her car when he was negotiating its purchase but her husband kept the proceeds of the sale. We there held the evidence was sufficient to take the case to the jury and to sustain the verdict against Mae that she conspired 'with her husband to sell a stolen car. There are no such damaging facts made out in this record against Edna or Pearlie.

Should the evidence be the same upon another trial, the court at the conclusion of appellees' case will direct a verdict for both appellants. Having reached this conclusion, it is not necessary to consider the alleged erroneous instructions or the alleged improper argument of counsel for appellees.

The motion for an appeal is sustained and the judgment is reversed for proceedings consistent with this opinion.